CHARLES GLANTON, PETITIONER-DEFENDANT, v. JOSEPH A. SHAFTO, RESPONDENT-PROSECUTOR.

Argued October 4. 1944—Decided February 16, 1945.

Before Justices PARKER and COLIE.

For the prosecutor, *Durand, Ivins & Carton* (*Robert V. Carton,* of counsel).

For the defendant, *Joseph F. Mattice.*

The opinion of the court was delivered by

COLIE, J. *Certiorari* was allowed to review a judgment of the Monmouth County Court of Common Pleas awarding temporary and permanent disability, together with incidental expenses unnecessary to enumerate, to Charles Glanton. The judgment of the Common Pleas was, in effect, an affirmance of a prior award rendered by the Workmen's Compensation Bureau.

The questions which we are called upon to decide are whether petitioner proved that his disability was due to the alleged accident; whether petitioner on December 8th, 1941, sustained an accident arising out of and in the course of his employment and whether petitioner gave the notice required by the statute or, in the alternative, the respondent-employer had actual notice within the prescribed ninety days. Thus it will be seen that the question is one of fact, and our duty is to examine the record, appraise the proofs and determine the fact questions, bearing in mind that while we will not lightly disturb the findings of fact of the lower tribunals, nevertheless we will correct the error where the lower tribunals have found the facts incorrectly. *American Cyanamid Co.* v. *Bortos,* 131 *N. J. L.* 339; *affirmed,* 132 *Id.* 327, and cases therein referred to. We therefore proceed to an examination of the proofs.

Charles Glanton was, in December, 1941, employed as handyman and helper in the garage of Joseph A. Shafto. On December 8th, 1941, when "heading up" drums containing fifty gallons of alcohol, the crucial incident took place. Parenthetically, we point out that "heading up" means rolling the drums into the desired place and then standing them on end by raising the other end. It does not mean lifting the drums clear of the floor. While so engaged, he said "I choked right up and my vein came out. * * * I couldn't swallow." He stopped work, sat down and drank a coca-cola, telling the head mechanic "I got something. It might be indigestion the way I choked up." He continued working until about the middle of January, 1942. Then, after talking with his employer, he went to Dr. Samuel Edelson who immediately ordered him to the hospital. Dr. Edelson's deposition reads,

*inter alia,* that he recalled no history of strain nor did he recall questioning the patient as to strain. Glanton, however, testified that he told Dr. Edelson that while "heading up" drums, the trouble came on him. After spending some nine days in Fitkin Memorial Hospital under observation, he left and tried to resume work but when he "bent over or something that vein come out" and so Dr. Edelson readmitted him to the hospital where he remained for two weeks. Subsequently in July, 1942, the medical staff of Fitkin Memorial referred Glanton to Dr. Charles P. Bailey, a chest surgeon connected with Hahnemann Hospital in Philadelphia. After some ten days at Hahnemann Hospital he was referred back to Fitkin Memorial to undergo a series of bismuth injections for a syphilitic condition preparatory to undergoing an exploratory operation by Dr. Bailey. In October, 1940, more than a year prior to the incident involving the drums of alcohol, Glanton had had occasion to call upon Dr. Joseph G. Villapiano because of pains in the right side of the chest and head, coughs and night sweats. Dr. Villapiano examined by fluoroscope and found that the mediastinum was enlarged on the right side, and there was some cloudiness in the right upper chest near the mediastinum. His diagnosis in 1940 was "myofascitis of the pectoral muscles on the right side and mediastinitis." Mediastinitis is an inflammation of the cell tissue lining the area in the middle of the chest between the pleurae. In October, 1942, Glanton was readmitted to Hahnemann Hospital where Dr. Bailey operated. Following the operation, Dr. Bailey's diagnosis was "thrombosis strain involving the superior vena cava and the azygos vein." The same diagnosis was made by Dr. Oscar V. Batson, professor of anatomy at the medical school of the University of Pennsylvania.

To a hypothetical question as to whether Glanton's present condition was due to the happening on December 8th, 1941, Dr. Bailey answered "I think it is." Dr. Batson said that he would definitely state that the present condition and the incident of December 8th, 1941, was causally related. (The record reads "casually related" but we assume this to be an inadvertent error and moreover the assumption does no harm to prosecutor in view of our findings.)

On behalf of the prosecutor, Dr. A. Wilbur Duryee, a specialist in diseases involving the blood vessels outside of the heart, and Dr. Louis Albright, a specialist in cardiovascular diseases, both gave their opinions that there was no causal connection between the patient's present condition and the occurrence on December 8th, 1941.

Thus we are confronted with the task of deciding between these divergent opinions of medical practitioners in their respective fields. In weighing the value to be given each opinion, we must search the record to ascertain what facts, if any, seem to support which of the divergent viewpoints.

The medical testimony was in agreement on the point that the defendant's condition was a thrombosis or a clot or obstruction in the superior vena cava which is a large vein emptying into the heart and immediately adjacent thereto and which returns the venous blood to the heart from the head, neck and upper limbs. There is no question but that the defendant's industrial usefulness is impaired to an extent amply justifying the award of 66 2/3% of total permanent disability.

The hypothetical questions put to Drs. Bailey and Batson are conspicuous for the absence of mention of the syphilitic condition of the defendant and also for the absence of any mention of pain following the incident of December 8th, 1941. The presence of the venereal infection is of peculiar significance because of the undisputed testimony that 33 1/3% of all known cases of thrombosis of the superior vena cava are due to syphilis. When this is coupled with the presence, more than a year earlier, of some cloudiness in the area of the mediastinum as testified to by Dr. Villapiano and which he diagnosed as mediastinitis, it leads toward the conclusion that the condition was one which had built up slowly rather than one, the onset of which was sudden. This also is substantiated by the testimony of Dr. Villapiano who, it will be recalled, made a fluoroscopic examination in 1940 and in 1942. He said that the condition as of December 24th, 1942, a date subsequent to the operation performed by Dr. Bailey, was a development of what had existed when he first examined in 1940. The significance of the absence of pain at the time

or shortly after the alleged accident on December 8th, 1941, lies·in the fact that there is again undisputed testimony that had the thrombosis of the superior vena cava been caused by "heading up" the drum of alcohol, there would have been pain due to the rupture or tearing of the intima or innermost lining of the blood vessel. Dr. Duryee described the pain as "a very acute, severe puncturing, knife-like pain." There is not one word throughout the record that the incident of December 8th, 1941, caused or was followed by pain and it is difficult to believe that if Glanton had experienced acute, knife-like pain that fact would not have been mentioned by him to at least one of the many doctors who examined, treated and took histories from him.

A thorough and painstaking analysis of the testimony leads us to the conclusion that the defendant has failed to establish that his present physical condition is attributable to the occurrence of December 8th, 1941, but that, in fact, it is solely attributable to a pre-existing physical condition which was in nowise connected with his employment. In view of our finding of fact on this phase of the case, it is unnecessary to pass upon the other points raised.

The judgment under review is reversed, and the cause remanded to the end that judgment may be entered in accordance herewith.